UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

HOLLY DIEBLER,                         1:19-cv-20155

            Plaintiff,         **OPINION**

    v.

SANMEDICA INTERNATIONAL, LLC,

            Defendant.

_____

APPEARANCES:

JAMES C. SHAH
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
475 WHITE HORSE PIKE
COLLINGSWOOD, NJ 08107
    Attorney for the Plaintiff.

DANIEL J. COHEN
Newman & Simpson, LLP
32 Mercer Street
Hackensack, NJ 07601
    Attorney for the Defendant.

**HILLMAN**, **DISTRICT JUDGE**

    This case concerns a class action lawsuit brought on behalf
of purchasers of SeroVital-hgh.  Presently before the Court is
Defendant's motion to dismiss and Defendant's motion to transfer
this case to the District of Utah.  For the reasons stated
below, the Court will deny Defendant's motion to transfer.  The
Court will grant in part and deny in part Defendant's motion to
dismiss.

1

BACKGROUND

Plaintiff alleges that Defendant SanMedica International, LLC ("SanMedica") owns, manufacturers, distributes, advertises and sells SeroVital-hgh ("SeroVital"), an alleged anti-aging product, both online and in retail locations throughout New Jersey. SanMedica maintains its principal place of business in Salt Lake City, Utah. According to Plaintiff, throughout 2015, she viewed television and print advertisements for SeroVital. In January 2016, Plaintiff called the phone number listed on SeroVital advertisements and placed an order for eighteen boxes of SeroVital over the phone. In total, Plaintiff purchased approximately $1,300 of SeroVital. Plaintiff alleges that she purchased SeroVital because Defendant touts SeroVital as increasing human growth hormone ("HGH"), resulting in a number of physical benefits. ECF No. 1, at ¶ 1. According to Plaintiff, Defendant stated that these alleged effects make "users look and feel decades – not years, but DECADES – younger." Id.

Plaintiff received her order in January 2016 and alleges that she used SeroVital as directed. Plaintiff alleges that she did not receive any of the advertised benefits of SeroVital and "in no way, shape or form [] looked or felt younger." Id. at ¶ 7. Plaintiff claims that if she had known that SeroVital would not provide any benefits, she would not have purchased the

product.  Plaintiff also claims that if SeroVital worked as advertised, she would purchase it in the future.  Plaintiff maintains that there is a possibility that she would purchase SeroVital in the future, based on an assumption that SeroVital's formula was improved and would now yield the associated health benefits of higher HGH levels.

According to Plaintiff, SeroVital contains one active ingredient: L-arginine.  Plaintiff contends that the amount of L-arginine in SeroVital is "*so low* that even when taking the recommended 4 capsule dosage, it would have no effect on HGH levels at all."  ECF No. 1, ¶ 33(a) (emphasis in original).  Plaintiff contends that SeroVital contains a number of other inactive ingredients including L-lysine, Glutamine, Oxy-proline, N-acetyl L-cysetine, and Schizonepta.  Plaintiff asserts that these ingredients do not meaningfully increase HGH levels.  Id. ¶¶ 33(b)-(f); ECF No. 13, at 20.  Furthermore, Plaintiff also alleges that if SeroVital were able to increase HBH levels by 682% as Defendant claims, this increase would be dangerous for consumers.

Therefore, Plaintiff alleges that Defendant's claims about the effects of SeroVital are merely false promises.[1]  In support

---

[1] Plaintiff points to specific false and misleading representations concerning SeroVital such as:
- "Turn back time with the 'anti-aging' breakthrough everyone is talking about!"

of this contention, Plaintiff alleges that the scientific community has confirmed that: "(1) [SeroVital] cannot increase HGH levels whatsoever, let alone by 682%; (2) [SeroVital] does not reduce wrinkles, 'decrease[] body fat,' 'increase[] lean muscle mass,' strengthen bones, 'improve[] mood,' 'heighten[] sex drive' or make 'users look and feel decades younger' because the oral administration of amino acids like SeroVital does not increase growth hormone bioactivity; (3) there is no causal link between increased HGH levels and most of the claimed results . . . (4) if SeroVital were to increase HGH levels as claimed, it would cause significant health risks." Id. at ¶ 2.  Plaintiff therefore alleges that Defendant's advertising is false,

---

- "It's clear that Growth Hormone has been associated with wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved mood, heightened sex drive, and making users look and feel decades—not years, but DECADES—younger"
- "682% mean increase in HGH levels"
- "Clinically tested"
- "Human Growth Hormone Secretagogue"
- "Maximum strength formula"
- Peak growth hormone levels associated with Youthful Skin Integrity* Lean Musculature* Elevated Energy Production* Adipose Tissue Distribution"
- "Now, after more than 20 years of time-consuming, detailed research, there's finally an affordable oral formula that encourages the pituitary glad to increase growth hormone production naturally, without danger drugs or synthetic hormone injections."

See ECF No. 1, at ¶ 22.

pointing to expert testimony that "SeroVital is not significantly different from a placebo."[2]   Id. at ¶ 3.

Plaintiff filed a class action lawsuit on November 13, 2019.  Plaintiff defines the class of affected consumers as "[a]ll persons who purchased the Product [SeroVital] in the state of New Jersey for personal use and not for resale, during the time period of six years prior to the filing of the Complaint, through the present.  Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."  Id. at ¶ 50.  Plaintiff's Complaint includes two counts: (1) Violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.; and (2) Breach of Express Warranty, N.J.S.A. § 12A:2-313, et seq.

Defendant filed a motion to transfer to the District of Utah and a motion to dismiss on December 31, 2019.  These matters have been fully briefed and are ripe for adjudication.

---

[2] Plaintiff's complaint includes declarations from two experts: Dr. Melmed and Dr. Madoff.  ECF No. 1, at ¶ 23.  Dr. Melmed is an endocrinologist with knowledge of growth hormones.  Id. at ¶ 24.  Dr. Madoff is also an endocrinologist.  Id. at ¶ 25.  The admissibility of these reports at this stage will be discussed below.

ANALYSIS

A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this case under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

B. Standard for a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a motion under Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the pleader.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Philips v. Cnty. Of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff).  A pleading is sufficient if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

When weighing a motion to dismiss, the Court does not ask "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 n. 8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions.'") (citations omitted).

In applying the Twombly/Iqbal standard, a district court will first "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusion." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 678).  Next, the Court will "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (citing Iqbal, 556 U.S. at 679).

To meet this standard, a "complaint must do more than allege the plaintiff's entitlement to relief." Id.; see also Philips, 515 F.3d at 234 ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of'
the necessary element.") (citing <u>Twombly</u>, 550 U.S at 556).  The
party moving to dismiss under 12(b)(6) "bears the burden of
showing that no claim has been presented."  <u>Hedges, v. United
States</u>, 404 F.3d 744, 750 (3d Cir. 2005).

   C. Standard for a Motion to Dismiss Pursuant to Federal Rule
      of Civil Procedure 9(b)

    For claims of fraud, Federal Rule of Civil Procedure 9(b)
imposes a heightened pleading requirement, over and above the
one set by Rule 8(a).  The purpose of Rule 9(b)'s heightened
pleading standard is both to provide notice to defendants and to
prevent false or unsubstantiated charges.  See <u>Rolo v. City
Investing Co. Liquidating Trust</u>, 155 F.3d 644, 658 (3d Cir.
1998).

    Under Rule 9(b), a plaintiff "must state with particularity
the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).
The level of particularity required is sufficient details to put
defendants on notice of the "precise misconduct with which they
are charged."  <u>In re Riddell Concussion Reduction Litigation</u>, 77
F.Supp.3d 422, 433 (D.N.J. 2015) (citing <u>Seville Indus.
Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d 786, 791
(3d Cir. 1984)) (other citation omitted).  Plaintiffs pleading
fraud must plead "'the date, time, and place of the alleged
fraud, or otherwise inject precision into the allegations by

some alternative means.'" Id. (quoting Grant v. Turner, 505 Fed.Appx. 107, 111 (3d Cir. 2012)). A plaintiff alleging fraud must also allege who made the misrepresentation to whom and the general content of the misrepresentation. See Lum v. Bank of America, 361 F.3d 216, 224 (3d Cir. 2004). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

   D. Motion to Transfer

   Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007); Stewart Org., Inc. v. Richo Corp., 487 U.S. 22, 29 (1988) (finding that Section 1404(a) "is intended to place discretion in the district court to adjudication motions for transfer according to an individualized case-by-case consideration of convenience and fairness") (citation omitted). The moving party bears the burden of showing a need for transfer. In re Amendt, 169 Fed.Appx. 93, 96 (3d Cir. 2006) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)).

   When considering a motion to transfer under § 1404(a), district courts weigh both the enumerated factors in § 1404(a)

(convenience of parties, convenience of witnesses, and interests of justice), but also the "private and public interests" to determine which forum would more conveniently facilitate the litigation and better service the interests of justice.  See Jumara, 55 F.3d at 879.  These private interests include:

- Plaintiff's forum preference as manifested in the original choice;

- Defendant's preference;

- Whether the claim arose elsewhere;

- The convenience of the parties as indicated by their relative physical and financial condition

- The convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

- The location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

The public interests include:

- The enforceability of the judgment;

- Practical considerations that could make the trial easy, expeditious, or inexpensive;

- The relative administrative difficulty in the two fora resulting from court congestion;

- The local interest in deciding local controversies at home;

- The public policies of the fora; and

- The familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (citations omitted).

E. Defendant's Motion to Transfer

Defendant asserts that because SanMedica is not a resident of New Jersey, does not operate offices in New Jersey, and all its marketing materials, product packaging, and actual products originate from outside of New Jersey, this case should be transferred.  Specifically, Defendant seeks to transfer this case to the District of Utah.  Defendant highlights that it is headquartered in Salt Lake City, Utah, and all its business and marketing decisions, materials, and products are disseminated from Utah.  Defendant also argues that it faced two related simultaneous putative class actions on opposite sides of the country.  Defendant emphasizes that this case and Pizana v. SanMedica Int'l LLC, No. 1:18-cv-00644 (E.D. Cal. 2019) are "nearly identical," relying on the same factual and expert contentions and posing the "functionally identical legal issues."  ECF No. 6-6, at 1-2.  Defendant argues it would be an extreme and unnecessary inconvenience to litigate this cases separated, and has requested that both cases be transferred to the District of Utah.[3]

---

[3] On January 29, 2020, the Eastern District of California denied Defendant's motion to transfer venue to the District of Utah. See Pizana v SanMedica Int'l LLC, No. 1:18-cv-0644, 2020 WL 469336, at * 3-4 (E.D. Cal. Jan. 29, 2020).

After reviewing the relevant factors, the Court determines that Defendant has not satisfied its burden in demonstrating that this case should be transferred under § 1404(a).  For the reasons stated below, the Court will deny Defendant's motion to transfer.

1. Section 1404(a) Enumerated Factors

a. Convenience of the Parties and Witnesses

Defendant argues that "virtually all Defendant's employees and senior personnel are based in Utah, and all corporate decision-making is performed in Utah."  ECF No. 6-6, at 7.  As such, Defendant contends that "[i]t is likely that some [of these witnesses] will not be able to make it to New Jersey to testify at trial."  Id. at 8.  Defendant does acknowledge that deposition testimony is available as an alternative to witness compulsion, but maintains that live testimony would be preferable to enable the Court to view visual aids and assess the witnesses' testimony.  The parties agree that Plaintiff will be personally inconvenienced if this case is transferred to Utah.

Plaintiff asserts that New Jersey is a more convenient location because all members of the class are New Jersey residents.  Plaintiff also highlights that one of its experts, Dr. Madoff, resides in Maryland, making New Jersey a more convenient location.

12

The Court finds that Defendant has not met its burden for demonstrating that convenience of the parties or witnesses weighs in favor of transfer.  The Parties acknowledge that deposition testimony is available to both parties within the District of New Jersey.  Defendant has merely stated that the District of Utah would be more convenient for its purposes, but has failed to show that the same is true taking both parties and their witnesses into consideration.

b. Interests of Justice

Defendant argues that the interest of justice weighs in favor of transferring this case to Utah.  Defendant asserts that because it is more likely that both Pizana and this case will be adjudicated in Utah, a transfer will conserve judicial resources, reduce prejudice to Plaintiff, and avoid inconsistent adjudications.  Noting that the Eastern District of California has declined to transfer Pizana to the District of Utah, the Court finds that the interests of justice do not weigh in favor of transferring this case.

2. Private Interests

With regard to the private interests, the Court notes that Plaintiff is a citizen of New Jersey and has chosen New Jersey as its forum.  "In general, a court must generally defer to the plaintiff's choice of forum, particularly when the plaintiff resides in the forum state."  Mercedes-Benz USA, LLC v. ATX

Group, Inc., 2009 U.S.Dist. LEXIS 65023, at *11 (D.N.J. July 27, 2009) (citation omitted); see Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) ("[A] plaintiff's choice of a proper forum is paramount consideration in any determination of a transfer request, and that choice should not be likely disturbed." (citation omitted)), cert. denied, 401 U.S. 910 (1971); see also Sinochem Int'l Co., 549 U.S. at 420 (finding that the party asserting that the present forum is inconvenient "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum"); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981) (finding a strong presumption in favor of the plaintiff's choice of forum in deciding forum non conveniens).  However, Plaintiff's choice of forum may also be afforded less deference when Plaintiff sues on behalf of a putative class.  See Ponzio v. Mercedes-Benz USA, LLC, 2020 WL 1183733, at * 10 (D.N.J. Mar. 11, 2020) (collecting cases).

Defendant asserts that all "relevant documents, including advertisements, Defendant's substantiation for its advertising claims, Defendant's financial records, etc.," are located in Utah.  ECF No. 6-6, at 8-9.  Defendant argues that this factor weighs in favor of transferring to the venue to Utah.  While the Court does not doubt that these records and documents are located in Utah, Defendant has not established that these records could not be produced in the District of New Jersey.

Next, Defendant argues that the location of the underlying action favors Utah.  To support this argument, Defendant cites Job Haines Home for the Aged v. Young, 936 F.Supp.223 (D.N.J. 1996).  In Young, the defendants sought a transfer for an action originally brought in the District of New Jersey.  This action alleged false and misleading public representations regarding the purchase and trading in the public debt securities of Gibraltar.  Id. at 226.  In granting the motion to transfer, this Court determined that "in a class action securities litigation, where the underlying facts have virtually nothing whatsoever to do with the forum state, and it is only fortuitous happenstance that the named class representative resides in the forum state," a court need not preserve the plaintiff's choice of forum.  Id. at 226-27.

According to Plaintiff, the location of the underlying action is New Jersey.  Plaintiff responds that unlike Young, this case involves a state-wide class, not a nation-wide class.  Plaintiff also distinguishes between the underlying action in Young and the case before this Court by highlighting that Defendant made false and misleading representations in New Jersey, the product was purchased in New Jersey by New Jersey residents, and Plaintiff relies on New Jersey state law to state her claims.

Though Plaintiff's decision to bring her suit in New Jersey may be entitled to less deference in these circumstances, it is not afforded no deference at this stage.  Defendant has not shown that the documents it intends to rely upon cannot be produced in New Jersey and Plaintiff has established a connection between this case and the current forum.  The Court finds that Defendant has not demonstrated that the private interests weigh in favor of transfer.

3. Public Interests

Defendant contends that a number of public interests weigh in favor of transfer.  Specifically, Defendant asserts that trying both Pizana and this case in Utah would make a trial easier, more expeditious, and less expensive.  Defendant also highlights the current judicial situation in New Jersey, citing that this district has three times the national average of pending cases and is in a self-described judicial crisis. Defendant also argues that while New Jersey may have an interest in protecting its citizens, Utah also has an interest in protecting Defendant and the defense witnesses.

Plaintiff counters that New Jersey has an interest in protecting consumers from in-state injuries caused by foreign corporations.  Plaintiff also disputes Defendant's contention that the higher than average caseload of judges in the District of New Jersey poses an administrative impediment to adjudicating

this action expeditiously.  Plaintiff also highlights that a court in the District of New Jersey is more familiar with New Jersey's consumer protection statutes than a court in the District of Utah.

The Court finds that these factors, as a whole do not favor transfer.  The Court does not find that it will encounter any administrative impediment to adjudicating this action expeditiously.  The Court does not find that Utah has a significantly greater interest than New Jersey in deciding this matter.  The Court also agrees with Plaintiff that this Court is better equipped to decide issues of New Jersey law than a court in the District of Utah.

Having weighed the enumerated factors in Section 1404(a), the private interests, and the public interests, the Court will deny Defendant's motion to transfer this case to the District of Utah.

F. Defendant's Motion to Dismiss

Having denied Defendant's motion to transfer, the Court will now turn to Defendant's motion to dismiss.  For the reasons stated below, the Court will grant Defendant's motion to dismiss with regard to Plaintiff's standing for injunctive relief.  The Court will deny the remainder of Defendant's motion to dismiss.

Defendant presents several arguments in support of its motion to dismiss: (1) Plaintiff's Complaint "rests entirely on

an impermissible prior substantiation claim"; (2) Plaintiff's allegations "do not show falsity and flatly contradict studies and other documents incorporated into, and integral to the Complaint"; (3) Plaintiff has not pleaded fraud with adequate specificity; and (4) Plaintiff lacks standing to pursue injunctive relief.  The Court will address each of these arguments in turn.  See ECF No. 7-3.

   1. Expert Opinions

     The Court will first consider Defendant's argument that the two expert reports included in the Complaint cannot be incorporated into a pleading and thus cannot be considered in the Court's ruling.  While some district courts have accepted affidavits, declarations, or expert reports for purposes of evaluating dismissal motions, this practice is not universal. See In Re Under Armour Securities Litigation, 409 F.Supp.3d 446, 454 (D. Md. 2019) (comparing cases).[4]  To the extent that these expert reports contain factual allegations rather than

---

[4] Defendant cites In Re Under Armour Securities Litigation for the proposition that expert reports "are not facts to be considered at the 12(b)(6) stage but are more akin to '"mere conclusory statements" opinions, or, legal conclusions". In Re Under Armour Securities Litigation, 409 F.Supp.3d at 454 (quoting Twombly, 550 U.S. at 555-56).  In reaching this conclusion, the District Court of Maryland took into account the heightened pleading standard under the Private Securities Litigation Reform Act (PSLRA).  Because this case is subject to a different heightened pleading standard under Rule 9(b), the Court will not rely on the court's reasoning in Under Armour.

conclusory statements, opinions, or legal conclusions, the Court will consider these expert reports for the purposes of this motion.[5]

2. Prior Substantiation

Plaintiff alleges that Defendant engaged in false and deceptive advertising in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq., which prohibits "[a]ny unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise. See N.J.S.A. § 56:8-2. Defendant argues that Plaintiff's claims are underpinned by a lack of substantiation theory.

Lack of substantiation is theory of liability premised upon the lack of scientific support for an advertised benefit of a product. See Chaudhri v. Lumileds LLC, 2018 WL 6322623, at *7 n. 10 (D.N.J. Dec. 3, 2018). This type of argument is distinguishable from a claim "premised upon allegations that competent scientific evidence demonstrates that claims made by a

---

[5] The Court notes that the Eastern District of California also declined to disregard Plaintiff's expert reports in Pizana.  See Pizana, 2020 WL 469336, at *6.

defendant are objectively false." Id. (citing In re Gerber Probiotic Sales Practices Litig., 2013 U.S. Dist. LEXIS 121191, at * 25 (D.N.J. Aug. 22, 2013)).  The Third Circuit has held that the New Jersey Consumer Fraud Act "does not recognize a prior substantiation claim."  Franulovic v. Coca Cola Co., 390 Fed.Appx. 125, 128 (3d Cir. 2010).

If Plaintiff had merely claimed that Defendant lacked evidence to prove its claims about SeroVital's effects on HGH levels, wrinkles, body fat, lean muscle mass, mood, sex drive, and consumers' looks and feelings, Defendant's argument might have merit.  However, the Court finds that Plaintiff has pleaded falsity, not just lack of substantiation.  Plaintiff has made several allegations: (a) SeroVital is a placebo; (b) SeroVital is incapable of increasing HGH levels; (c) SeroVital does not work as claimed; and (d) two experts agree that SeroVital does not work as advertised.  Taken together, the Court finds that these allegations are a claim of falsity, not a claim that Defendant lacks support for its contention that SeroVital raises HGH levels and that HGH levels are associated with certain health benefits.  As such, the Court finds that the New Jersey Consumer Fraud Act does recognize Plaintiff's claim.

The Court will deny Defendant's motion to dismiss based on an argument that Plaintiff merely asserts a lack of substantiation theory.

3. Falsity

Next, Defendant argues that Plaintiff's Complaint and
expert reports do not support a falsity claim because these
documents only make sweeping, conclusory statements.  According
to Defendant, the expert reports to which Plaintiff cites "do
not say what the Complaint claims or [] are based only on an
alleged lack of substantiation, not falsity."  ECF No. 7-3 at 9.
Defendant argues that because Plaintiff's complaint assesses the
efficacy of each ingredient of SeroVital individually, rather
than the ingredients' combined effect on HGH levels, Plaintiff
has failed to state a claim of falsity.  Defendant highlights
that it is clear that "SeroVital is a 'FORMULA'" and Defendant's
advertising does not claim that any individual ingredient in
SeroVital results in the advertised result when taken in
isolation.  Id. at 13.

Defendant compares Plaintiff's arguments to the arguments a
Judge in this Court rejected in Hodges v. Vitamin Shoppe, 2014
WL 200270 (D.N.J. Jan. 15, 2014).  In Hodges, a class of
consumers alleged that Vitamin Shoppe had falsely claimed that a
dietary supplement assisted with fitness training and endurance.
This Court dismissed the claims, holding that the plaintiffs'
claims failed to state "factual allegations as to the
effectiveness of the combined ingredients, that is, the ability

21

of the active ingredients to have a synergistic effect."  2014
WL 200270, at *4 n. 2.

Defendant also argues that its advertising does not
represent that SeroVital causes the benefits associated with
higher HGH levels.  According to the Defendant, SeroVital is
advertised as increasing HGH levels, and SeroVital's packaging
states that HGH levels are associated with certain health
benefits.  Defendant asserts that these claims should be
dismissed because the words Plaintiff identifies as a
misrepresentation do not match the words on SeroVital's label.
Defendant likens Plaintiff's argument to the unsuccessful claims
pursued in Kwan v. SanMedica Int'l, in which the plaintiff's
claims were dismissed for being "simply an allegation that
defendant's marketing claims lack scientific substantiation."
854 F.3d 1088, 1096 (9th Cir. 2017).

Plaintiff contends that the cases Defendant cites, such as
Hodges and Kwan, are inapposite because these cases discuss
prior substantiation claims.  According to Plaintiff, unlike the
arguments put forth in Hodges, Plaintiff has alleged that the
SeroVital as formulated does not produce the benefits Defendant
claims it will.  Plaintiff alleges that the only active
ingredient in SeroVital, L-arginine, is in an amount so low that
it would have no effect on HGH levels at all, making Defendant's
claims about SeroVital false.  Plaintiff also alleges that if

SeroVital were to have the benefits it claims, it would be dangerous to human health.  According to Plaintiff, this is further evidence that Defendant has deceived customers into believing that SeroVital could provide certain benefits. Plaintiff asserts that her claim is not similar to the plaintiff's case in Kwan because she has not effectively shifted the burden of producing evidence that SeroVital works to Defendant.

Construing the factual allegations in the Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has stated a claim of falsity.  The Court agrees with Plaintiff's distinction between the current matter and Hodges and Kwan.  At this stage, Plaintiff has adequately alleged that low doses of L-arginine cannot yield an increase in HGH levels by 682% as claimed, and cannot lead to the purported health benefits of SeroVital.  Defendant has marketed SeroVital as being able to increase HGH levels and has at the same time claimed that higher HGH levels are associated with several health benefits.  The Court finds that it is plausible, based on Defendant's statements and advertising, that a consumer could reasonably conclude that SeroVital would yield the health benefits associated with increased HGH.  Therefore, the Court finds that Plaintiff has adequately pleaded falsity at this stage.

The Court will deny Defendant's motion to dismiss based on a failure to plead falsity.

4. Pleading Fraud under Rule 9(b) and 12(b)(6)

Defendant alleges that Plaintiff has failed to satisfy either the Rule 9(b) standard or the Rule 12(b)(6) standard for her claims of fraud. Defendant asserts that Plaintiff's sole allegation about SeroVital's advertised ability to increase sex drive, decrease body fat, increase lean muscle mass, improve moods, and decrease wrinkles is vague and conclusory. Defendant contends that Plaintiff only cited SeroVital packaging as the basis for her claim, failing to point to where on the packaging Defendant makes these allegedly false claims. Defendant distinguishes between SeroVital packaging, which states that "It's clear that Growth Hormone has been associated with wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved mood, [and] heightened sex drive . . ." and Plaintiff's claims, which assert that Defendant claims that SeroVital itself provides these health benefits. Defendant also highlights that Plaintiff's complaint does not allege any facts showing that Plaintiff did not receive increased HGH levels. Defendant further argues Plaintiff has failed to plead more than a sheer possibility that Defendant acted unlawfully.

Plaintiff maintains that she has satisfied the pleading standards under Rule 9(b) because she adequately alleged the

"who, what, when, where, and how of Defendant's fraudulent representations."  ECF No. 13, at 31.

While Plaintiff has not alleged how she measured her HGH levels during or after taking SeroVital, she does allege that she did not experience any of the benefits Defendant advertised as associated with HGH and SeroVital.  The Court finds that Plaintiff's Complaint adequately puts Defendant on notice that she is proceeding in this action under a theory that SeroVital categorically cannot increase HGH levels as advertised, nor can it yield any of the benefits Defendant claims are associated with higher HGH levels.  Taken as a whole, Plaintiff's allegations meet the pleading standard under Rule 9(b). Plaintiff's Complaint identifies who (San Medica International), what (SeroVital and its packaging), when (January 2016 after viewing television advertisements in 2015 and 2016); where (Plaintiff purchased SeroVital while in New Jersey); and how (SeroVital is advertised as increasing HGH levels and markets the benefits of HGH, but seems to yield neither higher HGH levels nor any associated health benefits).  The Court will deny Defendant's motion to dismiss under Rule 9(b).

Having found that Plaintiff has satisfied the pleading standard under 9(b) by including in her allegations the "who, what, when, where and how" of the alleged misconduct, the Court will deny Defendant's motion to dismiss under Rule 12(b)(6).

5. Breach of Express Warranty

Defendant asserts that Plaintiff has not alleged any facts showing that Defendant's representations regarding SeroVital were false.  Defendant compares Plaintiff's case to the Aloudi v. Intramedic Research Grp., LLC, 729 Fed.App'x 514 (9th Cir. 2017), in which the Ninth Circuit affirmed dismissal of a plaintiff's claim that a manufacturer's "clinically proved" representation did not state a cognizable claim for actual falsity under California's advertising law.  Defendant alleges that Plaintiff misquoted the packaging of SeroVital in her attempt to state a claim.  Defendant further highlights that SeroVital's packaging clearly states "individual results will vary."

Plaintiff argues that her Complaint contains detailed and specific allegations regarding Defendant's misrepresentations. Plaintiff alleges that Defendant's disclaimer is inadequate to relieve Defendant of liability.  Plaintiff distinguishes her claims from Aloudi and Kwan v. SanMedica Int'l, LLC, 854 F.3d 1088 (9th Cir. 2017); Kwan v. SanMedica Int'l, 2015 WL 848868 (N.D. Cal. Feb. 25, 2015); Kwan v. SanMedica Int'l LLC, 2014 WL 5494681 (N.D. Cal. Oct. 30, 2014) by highlighting that these cases discus prior substantiation and rely on different, lesser forms of evidence.

Under New Jersey law, in order to state a claim for breach of express warranty, a plaintiff "must properly allege: (1) that the defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description. Snyder v. Farnam Companies, Inc., 792 F.Supp.2d 712, 721 (D.N.J. 2011) (citing N.J. Stat. Ann. § 12A:20313).

The Court finds that Plaintiff has stated a claim for breach of express warranty.  Plaintiff has alleged that Defendant made a description of SeroVital as increasing HGH levels.  Defendant also discussed the associated health benefits of heightened HGH levels in the course of its advertisement. Plaintiff has stated that that this alleged increase in HGH levels and the expected health benefits were part of the basis of the bargain for purchasing SeroVital.  Plaintiff has further alleged that SeroVital ultimately did not conform to the description Defendant provided.

The Court finds Defendant's inclusion of "individual results will vary" unpersuasive in defeating Plaintiff's breach of warranty claim at the pleading stage.  In support of its position, Defendant cites Spence v. Basic Research, 2018 WL 1997310 at * 5 (D. Utah, Apr. 27, 2018) where the District of

Utah held that a plaintiff had failed to state a claim for breach of warranty in the presence of a disclaimer that "individual results will vary."[6]

In contrast, Plaintiff cites Naiser v. Unilever U.S., Inc., 975 F.Supp.2d 727, 735 (W.D. Ky. 2013) for the proposition that courts generally reject the idea that "inconspicuous disclaimers in small print" negate the effects of false or misleading advertising.  Similarly, in F.T.C. v. QT, Inc., when considering whether a defendant violated the Federal Trade Commission Act, the court considered both the "strong net impression conveyed" by a product's advertisements and the defendant's "sprinkling of several inconspicuous disclaimers in small print" during an infomercial.  448 F.Supp.2d 908, 924 (N.D. Ill. 2006).  The Court agrees with Plaintiff that Defendant's small disclaimer that "individual results may vary" does not negate the effects of Defendant's misleading claims about SeroVital's effect on HGH levels and the health benefits associated with increased HGH.

---

[6] In Spence, the product at issue promised that "consumers would lose a 'significant amount' of body fat and experience a 'significant reduction' in 'fat around the waist' and lose 'inch upon inch of unsightly fat' within 30 days."  The court found that while "30 days is a specific period of time, neither the promise of weight loss nor the promise of reshaping the body is a specific level of performance."  Spence v. Basic Research, 2018 WL 1997310 at * 5 (D. Utah, Apr. 27, 2018).  The Court took these claims into consideration and also noted the disclaimer that "individual results will vary" when determining that Plaintiff had failed to state a claim for breach of warranty.

The Court will deny Defendant's motion to dismiss
Plaintiff's breach of warranty claim for failure to state a
claim.

6. Standing for Injunctive Relief

Defendant alleges that Plaintiff lacks standing to seek
injunctive relief because Plaintiff will not continue to
purchase SeroVital.  Defendant cites McNair v. Synapse Grp., 672
F.3d 213, 223 (3d Cir. 2012) to support its claim that "[p]ast
exposure to illegal conduct does not in itself show a present
case or controversy regarding injunctive relief . . . if
unaccompanied by any continuing, present adverse effects."
Defendant argues that it is inconsistent for Plaintiff to argue
both that she would like to purchase SeroVital again if it
worked as advertised and that SeroVital does not and cannot work
as advertised.

Plaintiff has alleged that she might purchase SeroVital
again in the future because she may (perhaps incorrectly) assume
that Defendant improved SeroVital's formula.  Plaintiff has
alleged that she is not a sophisticated consumer in terms of
"bioavailability or the effects of HGH in different
formulations" and would have "no idea how to tell if Defendant
has improved its Product or not."  ECF No. 1, ¶ 8; ECF No. 13,
at 38.  Therefore, Plaintiff argues that this case is
distinguishable from McNair.

In McNair, the plaintiffs alleged that they had subscribed to certain magazines. These magazines outsourced their subscription services to the defendant, Synapse Group Inc. ("Synapse"). Synapse operated subscription plans that never expired and continually billed customers unless they affirmatively sought to cancel the subscription. The Third Circuit held that the plaintiffs had standing to bring claims for monetary relief under the New Jersey Consumer Fraud Act, but lacked standing to bring a claim for injunctive relief. 672 F.3d 225. The Third Circuit explained that because the plaintiffs were not current subscribers and could not show that they were likely to become subscribers in the future, they could not pursue a claim for injunctive relief.

The Court notes that the plaintiffs in McNair made a similar claim as Plaintiff in this case. In McNair, the plaintiffs claimed that they might be tricked into becoming Synapse customers again because "Synapse does not prominently identify itself when making its magazine offers." Id. at 225 n. 15. The Third Circuit opined that while it could not "definitively say they [the plaintiffs] won't get fooled again, it can hardly be said that [plaintiffs] face a likelihood of future injury when they *might* be fooled . . ." Id. (emphasis in original). In reaching this conclusion, the Third Circuit reasoned that customers wishing to purchase magazine

30

subscriptions would have to uncritically accept Synapse's offer and would instead call upon their past dealings with Synapse. Id.

This case presents a similar question to the one in McNair. As such, the Court finds that Plaintiff would have to uncritically accept Defendant's offer that SeroVital would increase HGH levels and that HGH levels are associated with certain health benefits.  While the Court cannot definitively say that Plaintiff will not be fooled again by Defendant's products and advertisements, the Court agrees with Defendant that Plaintiff does not face of likelihood of future injury because she might someday believe that SeroVital's formula has been improved and purchase it again.

While Plaintiff's belief that SeroVital's current formulation does not currently work as advertised does not preclude the possibility of SeroVital being reworked to produce its advertised benefits in the future, the Court finds, in light of Plaintiff's allegations of fraud, that Plaintiff's willingness to believe that SeroVital's formula could change is insufficient to establish standing for a claim of injunctive relief.  As our Court of Appeals said in McNair, "the law accords people the dignity of assuming that they act rationally, in light of the information they possess." Id, at 226.

Therefore, the Court will dismiss Plaintiff's request for injunctive relief based on a lack of standing.

CONCLUSION

For the reasons stated above, the Court will deny Defendant's motion to transfer.  The Court will grant in part and deny in part Defendant's motion to dismiss.

An appropriate Order will be entered.


Date: September 22, 2020          s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.