## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

HOLLY DEIBLER, EDWARD
LENHART, AND DIANE LENHART,
Individually and on behalf of
all others similarly
situated,

          Plaintiffs,

    v.

BASIC RESEARCH, LLC; BR COS,
LLC; BASIC RESEARCH HOLDINGS,
LLC; BASIC RESEARCH
INTERMEDIATE, LLC; SIERRA
RESEARCH GROUP, LLC; MAJESTIC
MEDIA, LLC; CRM SPECIALISTS,
LLC; BYDEX MANAGEMENT, LLC;
SANMEDICA INTERNATIONAL,
LLC; LIMITLESS WORLDWIDE,
LLC; NOVEX BIOTECH, L.L.C;
BODEE GAY; GINA DAINES; HALEY
BLACKETT; KIMBERLY HAWS
(f/k/a KIMBERLY HUMPHERYS);
and MITCHELL K. FRIEDLANDER

          Defendants.

1:19-cv-20155-NLH-MJS

**OPINION**

---

Appearances:

NATHAN ZIPPERIAN
MILLER SHAH LLP
1845 WALNUT STREET
SUITE 806
PHILADELPHIA, PA. 19103

JAMES C. SHAH
MILLER SHAH LLP
2 HUDSON PLACE

```
SUITE 100
HOBOKEN, N.J. 07030
```

     *On behalf of Plaintiffs*

```
DANIEL J. COHEN
NEWMAN, SIMPSON & COHEN, LLP
25 MAIN STREET
COURT PLAZA NORTH, 6TH FLOOR
HACKENSACK, N.J. 07601
```

     *On behalf of Defendants Basic Research, LLC; BR COS, LLC;*
     *Basic Research Holdings, LLC; Basic Research Intermediate,*
     *LLC; Sierra Research Group, LLC; Majestic Media, LLC; CRM*
     *Specialists, LLC; Bydex Management, LLC; SanMedica*
     *International, LLC; Limitless Worldwide, LLC; and Novex*
     *Biotech, LLC*

```
AKSHAR U. PATEL
ALAN S. NAAR
GREENBAUM, ROWE, SMITH & DAVIS LLP
99 WOOD AVENUE SOUTH
ISELIN, N.J. 08830
```

     *On behalf of Defendants Bodee Gay, Gina Daines, Haley*
     *Blackett, and Kimm Humpherys*

```
CARL D. POPLAR
1010 KINGS HIGHWAY SOUTH
BUILDING TWO
CHERRY HILL, N.J. 08034
```

     *On behalf of Defendant Mitchell K. Friedlander*

**HILLMAN**, District Judge

     Pending before the Court are the motion of Defendant Mitchell K. Friedlander to dismiss the first amended complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), (ECF 174); Defendants Bodee Gay, Gina Daines, Haley Blackett, and Kimm Humpherys' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6) or, in the

2

alternative, transfer this action to the United States District Court for the District of Utah, (ECF 178); Defendant Limitless Worldwide, LLC's ("Limitless") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (2), (ECF 181); Defendants Basic Research, LLC; BR COS, LLC; Basic Research Holdings, LLC; Basic Research Intermediate, LLC; Sierra Research Group, LLC; Majestic Media, LLC; CRM Specialists, LLC; Bydex Management, LLC; SanMedica International, LLC ("SanMedica"); and Novex Biotech, LLC's ("Novex") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6) or, in the alternative, transfer the matter to the District of Utah, (ECF 183)[1]; and the parties' joint motion to seal, (ECF 230). For the reasons expressed below, the parties' joint motion to seal will be granted in part and denied in part. Because the Court finds, based on the information and arguments provided, that transfer to the District of Utah is appropriate, it will deny the pending motions as moot and provide Limitless and Friedlander thirty days to show cause why this matter should not be transferred.[2]

---

[1] SanMedica and Novex do not contest the fact that they are subject to personal jurisdiction in New Jersey. (ECF 183-2 at ii n.1).

[2] While the other Defendants argue in favor of transfer in the alternative to their motions to dismiss and the Court has read Plaintiffs' position on transfer by way of their opposition, Limitless and Friedlander have solely moved for dismissal and

## I. Background

Plaintiff Holly Deibler is a resident of Atlantic County, New Jersey who viewed print and television advertisements for the supplement SeroVital, called a phone number provided in a television advertisement in January 2016, and ordered eighteen thirty-day supplies of the product for a discounted price of $1,300 based on SeroVital's advertised ability to increase human growth hormone ("HGH") and, by extension, decrease body fat, increase lean muscle, heighten sex drive, improve mood, decrease wrinkles, and generally make customers look and feel significantly younger.  (ECF 133 at ¶ 14).  Deibler used SeroVital as directed but did not receive any of the advertised benefits and claims that she would not have purchased the product had she known that it would not provide the promised effects.  (Id. at ¶ 15).  Plaintiffs Edward and Diane Lenhart (individually "Edward" and "Diane") are residents of Salem County, New Jersey.  (Id. at ¶¶ 17, 20).  Edward regularly bought SeroVital and, later, Growth Factor 9 ("GF-9") –

-----

the Court is left only to presume their respective positions. Rather than grant the other Defendants' motions in part, however, the Court chooses to deny each motion as moot, provide Limitless and Friedlander thirty days to articulate their respective positions on transfer, and enter an appropriate order thereafter.  In so deciding, the Court recognizes its ability to sua sponte transfer cases pursuant to 28 U.S.C. § 1404(a).  See Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 132 (3d Cir. 2020).

approximately thirty-six one-month supplies in all – online and from Ulta and GNC retail stores located in Cherry Hill, Vineland, and Pennsville, New Jersey in reliance on the products' advertised ability to significantly increase HGH levels and produce anti-aging benefits including decreased body fat, increased lean muscle, heightened sex drive, and reduced wrinkles.  (Id. at ¶ 17).  Edward did not obtain the advertised benefits after using the products as directed and would not have purchased them had he known that he would not enjoy the desired effects.  (Id. at ¶ 18).  Similarly, Diane alternated between purchasing SeroVital and GF-9 from 2016 to 2019 – relying on the same promised HGH-increasing and anti-aging benefits as Co-Plaintiffs – but did not receive those benefits despite using the products as directed.  (Id. at ¶¶ 20-21).

Deibler initially filed this action against SanMedica in November 2019 on behalf of herself and a class of those who purchased SeroVital for personal use in New Jersey, alleging violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8-1, et seq., and breach of express warranty pursuant to N.J.S.A. §§ 12A:2-313, et seq.  (ECF 1 at ¶¶ 1, 50, 59-78).  SanMedica moved for dismissal and to transfer the case to the District of Utah, (ECF 6; ECF 7), with the Court denying the latter and granting the former to the extent that it found that Deibler lacked standing to seek injunctive relief, Diebler

v. SanMedica Int'l, LLC, 488 F. Supp. 3d 169 (D.N.J. Sept. 22, 2020).[3]

The case proceeded to discovery but, perhaps more importantly, discovery proceeded in a similar action litigated by Deibler's counsel, Pizana v. SanMedica International, LLC, in the United States District Court for the Eastern District of California – leading Deibler to move to amend her complaint on March 1, 2021.  (ECF 66; ECF 66-1 at 6-7).  Deibler's motion alleged that SanMedica and the then-proposed Defendants "are part and parcel to a single enterprise that misrepresents the Products' benefits through an intentional and deliberate practice of marketing, advertising, and selling products under different brand names and under the names of numerous companies" ultimately allegedly flooding the market with similar products while avoiding liability via a complex structure of affiliates. (ECF 66-1 at 2, 13).  Magistrate Judge Matthew J. Skahill granted Deibler's motion to amend in part but denied her attempt to assert alter ego claims under her NJCFA and express-warranty claims.  (ECF 129; ECF 130).  This Court later affirmed that decision.  (ECF 159; ECF 160).

As amended, the FAC alleges that the late Dennis Gay, father of Gay, Daines, Blackett, and Humpherys, founded Basic

---

[3] The Court acknowledges the misspelling of Deibler's last name in the caption of its September 22, 2020 opinion.

Research and partnered with Friedlander to market and sell supplements invented by Friedlander – including SeroVital, Thrive, SeroDyne, and GF-9.  (ECF 133 at ¶ 2).  Now operated by the individual Defendants under the Basic Research umbrella, a web of affiliates has been used to market, advertise, and sell products featuring the same formula under different names and companies to create confusion in the marketplace, manufacture an appearance of independence and competition, and avoid being held liable to customers for failing to deliver on the same promised benefits supported by the same in-house scientific substantiation, according to Plaintiffs.  (Id. at ¶¶ 1, 3-8, 62, 64, 67-69).  For instance, SeroVital is allegedly sold by SanMedica, Thrive and SeroDyne are allegedly sold by Limitless, and GF-9 is allegedly sold by Novex.  (Id. at ¶¶ 5, 64).  Most products are allegedly sold online via distinct websites intended to conceal the fact that products are affiliated with one another and to spread misleading product information nationwide.  (Id. at ¶ 66).  Plaintiffs claim that the products cannot increase HGH levels at all, the HGH increases promised would cause health risks, there is no causal link between increased HGH levels and the advertised anti-aging benefits, and the products do not provide the advertised benefits.  (Id. at ¶¶ 10-11).

The FAC identifies Basic Research Holdings, Basic Research

Intermediate, and BR COS as limited liability companies headquartered in Dover, Delaware with principal places of business in Salt Lake City, Utah, that have operated as holding companies for affiliated entities. (Id. at ¶ 23(a)-(c)).  Basic Research (responsible for distribution), Sierra Research Group (responsible for research and development), Majestic Media (responsible for marketing and advertising), CRM Specialists (responsible for sales and customer service), Bydex Management (responsible for human resources and employment), SanMedica (responsible for SeroVital), Limitless (responsible for Thrive and SeroDyne), and Novex (responsible for GF-9) are identified as Utah limited liability companies and subsidiaries of Basic Research Holdings, Basic Research Intermediate, or BR COS operating entirely out of Basic Research headquarters in Salt Lake City.  (Id. at ¶ 23 (d)-(k)).  Gay, Daines, and Friedlander are identified as residents of Utah who are owners and chief executive, chief marketing officer, and executive officer, respectively, with control over the alleged enterprise's operations.  (Id. at ¶ 23 (l)-(n)).

In addition to the inclusion of new Defendants, Edward and Diane as Plaintiffs, and Thrive and SeroDyne as offending products, the FAC adds a count for alleged violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(a), (c)-(d), (id. at ¶¶ 128-72), and expands the

8

class to "[a]ll persons who purchased the Products for personal use and not for resale during the time period of six years prior to the filing of the Complaint, through the present" while maintaining a New Jersey subclass, (id. at ¶¶ 116-17).

Defendants filed the pending motions to dismiss.  (ECF 174; ECF 178; ECF 181; ECF 183).  The Court permitted Plaintiffs to file two overlength omnibus oppositions, (ECF 213), which they did, (ECF 214; ECF 217).  Defendants replied.  (ECF 221; ECF 224; ECF 225; ECF 226).

**II. Discussion**

**A. Jurisdiction**

The Court exercises jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, which provides district courts with original jurisdiction over class actions in which the matter in controversy exceeds $5 million exclusive of interest and costs and the parties are minimally diverse, i.e., any class member is a citizen of a different state than any defendant.  See 28 U.S.C. § 1332(d)(2).

**B. Transfer Pursuant to 28 U.S.C. § 1404**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "Section 1404(a) 'is

9

[intended] "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."'" Def. Distributed v. Platkin, 617 F. Supp. 3d 213, 225 (D.N.J. July 27, 2022) (alteration in original) (quoting Kremer v. Lysich, No. 18-03676, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019))). Whether transfer is appropriate is determined based on a two-step analysis. Id. at 226. First, the court determines whether the transferee district is one in which the action could have been brought originally based on its ability to exercise personal jurisdiction over all parties and the appropriateness of venue and, second, the court weighs private and public interests "to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Id. (quoting Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)).

Courts within the Third Circuit must not limit themselves to factors stated in 28 U.S.C. § 1404(a), but must instead analyze private interests – which include 1) the plaintiff's forum preference, 2) the defendant's forum preference, 3) whether the claims arose elsewhere, 4) the parties' convenience, 5) the convenience of witnesses, and 6) the location of books and records – and public interests – which include 1) the enforceability of judgment; 2) practical considerations

regarding the ease, expediency, and expense of trial; 3) court congestion in the two fora; 4) local interests in having the matter decided at home; 5) public policies of the fora; and 6) the familiarity of judges with applicable state law.  See Ferratex, Inc. v. U.S. Sewer & Drain, Inc., 121 F. Supp. 3d 432, 440 (D.N.J. Aug. 4, 2015) (citing Jumara, 55 F.3d at 879-80). Though Jumara provided these factors to assess the appropriateness of transfer, "there is no definitive formula or list of the factors to consider."  See Eagle View Techs., Inc. v. GAF Materials, LLC, 594 F. Supp. 3d 613, 619 (D.N.J. Mar. 28, 2022) (citing Jumara, 55 F.3d at 879).

The burden is on the movant to demonstrate that the balance of factors strongly favors transfer such that an even break or slight tilt toward transfer is insufficient.  Id.  That said, 28 U.S.C. § 1404(a) provides district courts with "large discretion" in evaluating transfer motions based on individualized, case-specific factors.  See Def. Distributed, 617 F. Supp. 3d at 225 (quoting Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1045 (3d Cir. 1973)); see also Lepre v. Lukus, 602 F. App'x 864, 868 (3d Cir. 2015) (reviewing the district court's transfer decision for abuse of discretion (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988))).  In exercising this discretion, courts may transfer matters at a party's request or sua sponte.  See Danziger & De

11

Llano, LLP, 948 F.3d at 132 (citing Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 171 (3d Cir. 2011)); Meyers v. Heffernan, No. 10-212, 2012 WL 1133732, at *5 (D. Del. Mar. 29, 2012) (noting that a "court's authority to transfer cases pursuant to 28 U.S.C. § 1404(a) does not depend upon a motion, stipulation, or consent of parties to the litigation," but finding that it often violates due process to sua sponte transfer without providing a party an opportunity to be heard (citing Dish Network Corp. v. TiVo, Inc., 604 F. Supp. 2d 719, 725 (D. Del. Mar. 31, 2009))); see also Beacon Nav. GmbH v. Crysler Grp. L.L.C., Nos. 11-cv-921, 11-cv-922, 11-cv-923, 11-cv-924, 11-cv-925, 11-cv-927, 11-cv-928, 11-cv-929, 11-cv-930, 11-cv-931, 11-cv-932, 11-cv-933, 11-cv-934, 11-cv-935, 11-cv-936, 11-cv-937, 11-cv-939, 11-cv-940, 11-cv-941, 11-cv-942, 11-cv-943, 11-cv-944, 11-cv-945, 11-cv-946, 11-cv-947, 11-cv-948, 11-cv-949, 11-cv-950, 11-cv-951, 11-cv-952, 11-cv-953, 11-cv-954, 11-cv-955, 11-cv-956, 11-cv-957, 11-cv-958, 11-cv-959, 11-cv-960, 2013 WL 1163943, at *1 n.4 (D. Del. Mar. 20, 2013) (recognizing that some of the defendants did not move for transfer, but concluding that it could sua sponte transfer the actions to the Eastern District of Michigan based on its inherent authority to manage its own docket after having concluded that the moving defendants met their burden and non-movants, to the extent that they believed that they were aggrieved by transfer, could seek

recourse via a motion for reconsideration or petition for a writ of mandamus).

## III. Analysis

After evaluating the applicable private and public factors as set forth below, the Court holds that transfer of this action to the District of Utah is warranted.

### A. This Action May Have Been Brought in the District of Utah

As a threshold matter, the Court finds that Plaintiffs could have originally brought this action in the District of Utah. Subject matter jurisdiction is asserted under the Class Action Fairness Act, (ECF 133 at ¶ 59), which provides district courts with original jurisdiction over class actions in which the matter in controversy exceeds $5 million exclusive of interest and costs and any class member is a citizen of a different state than any defendant, 28 U.S.C. § 1332(d)(2). At the very least, the FAC alleges diversity among Plaintiffs, domiciled in New Jersey, and individual Defendants, domiciled in Utah. (ECF 133 at ¶¶ 14, 17, 20, 23(l)-(n), 48, 51).

Venue would have also been appropriate in Utah. Venue over RICO claims is governed by both 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391. Fiorani v. Chrysler Grp., 510 F. App'x 109, 111 (3d Cir. 2013). The RICO statute provides that a civil action "against any person may be instituted in the district court of the United States for any district in which such person resides,

is found, has an agent, or transacts his affairs."  18 U.S.C. §
1965(a).  Again, at minimum, the residency of individual
Defendants is relevant here.  Further, venue is generally
appropriate in "a judicial district in which a substantial part
of the events or omissions giving rise to the claim occurred . .
. ."  28 U.S.C. § 1391(b)(2).  Plaintiffs' allegations center on
a purported scheme based in Utah.  For example, Plaintiffs
allege that Defendants disseminate false and misleading
representations regarding products from Basic Research
headquarters in Utah.  (ECF 133 at ¶¶ 75, 79, 83, 87).

Finally, personal jurisdiction may have been exercised over
all Defendants in the District of Utah.  As alleged in the FAC,
Defendants are all individuals domiciled in Utah or limited
liability companies organized under the laws of, or maintaining
their principal place of business in, Utah.  (Id. at ¶¶ 23, 48,
51).  Jurisdiction therefore would have been appropriate in
Utah.  See Murphy v. Eisai, Inc., 503 F. Supp. 3d 207, 223
(D.N.J. Nov. 28, 2020) ("For an individual, the paradigm forum
for the exercise of general jurisdiction is the individual's
domicile . . . ." (quoting Goodyear Dunlop Tires Operations,
S.A. v. Brown, 564 U.S. 915, 924 (2011))); Hannah v. Johnson &
Johnson Inc., No. 18-10319, 2020 WL 3497010, at *16 (D.N.J. June
29, 2020) ("[F]or the purposes of general personal jurisdiction,
a limited liability company's citizenship is that of its

14

principal place of business and state of incorporation."
(collecting cases)).

Limitless and Friedlander, unlike the individual and entity
Defendants who have moved for transfer in the alternative
("Moving Defendants"), have solely sought dismissal in motions
and accompanying briefs.  (ECF 174; ECF 174-1; ECF 181; ECF 181-
2).[4]  Limitless' briefing nonetheless provides that it is a

---

[4] As referenced, each pending dismissal motion asserts lack of
personal jurisdiction in New Jersey as to all Defendants except
SanMedica and Novex.  The FAC premises personal jurisdiction on
a sufficient number of minimum contacts between Defendants and
New Jersey, though at least some of these contacts – presumably
mistakenly – refer to alleged contacts in California.  (ECF 133
at ¶¶ 24, 61).  Plaintiffs' opposition asserts that the Court
may exercise personal jurisdiction over each Defendant based on
minimum and imputed contacts with New Jersey.  (ECF 217 at 30-
55).  Personal jurisdiction is also asserted pursuant to RICO.
(Id. at 22-30).  In Laurel Gardens, LLC v. McKenna, the Third
Circuit recognized that "[w]hen a civil RICO action is brought
in a district court where personal jurisdiction can be
established over at least one defendant, summonses can be served
nationwide on other defendants if required by the ends of
justice."  948 F.3d 105, 120 (3d Cir. 2020) (alteration in
original) (quoting Cory v. Aztec Steel Bldg., Inc., 468 F.3d
1226, 1231 (10th Cir. 2006)).  Laurel Gardens discussed
approaches in other circuits, including the Ninth Circuit's
requirement that a plaintiff establish that no other district
court can exercise personal jurisdiction over all defendants and
the Tenth Circuit's more flexible "ends of justice" standard,
but declined to select a correct approach because personal
jurisdiction was able to be exercised under both standards.  Id.
at 120-21.  With respect to the "ends of justice," the court
concluded that exercise of personal jurisdiction in the Eastern
District of Pennsylvania over the Delaware defendants did "not
compromise the Second Circuit's recognition of Congress's
preference 'to avoid, where possible, haling defendants into far
flung fora.'"  Id. at 122 (quoting appellant briefing which, in
turn, quoted PT United Can Co. v. Crown Cork & Seal Co., 138
F.3d 65, 72 (2d Cir. 1998)).  Plaintiffs argue that exercise of

domiciliary of Utah for personal-jurisdiction purposes, (ECF 181-2 at 20), and has maintained its principal place of business in Salt Lake City, first renting space from Basic Research and then in a separate property, from 2012 to when it "closed its doors" in December 2022, (ECF 181-1 at ¶¶ 13-14). Friedlander, on the other hand, has provided a declaration stating that he has been domiciled in Nevada during all relevant times with the exception of 2015 to 2017, during which time he was a resident of Florida, (ECF 174-2 at ¶ 3), but "does not contest that Utah has personal jurisdiction over him for the claims alleged," (ECF 174-1 at 13).

The Court thus concludes that Plaintiffs may have brought this action in the District of Utah.

---

personal jurisdiction via the RICO statute is appropriate here based on the quantity of alleged product sales in New Jersey, the parties' relative ability to litigate in the two fora, and that no single district could exercise jurisdiction over all Defendants based on Basic Research, BR COS, Basic Research Holdings, and Basic Research Intermediate's location in Delaware and Friedlander's domicile in Nevada and Florida. (ECF 217 at 25-29). This argument does not seem to acknowledge that Friedlander does not contest jurisdiction in Utah, (ECF 174-1 at 13), and that personal jurisdiction over limited liability companies is premised, in part, on their principal place of business, Hannah, 2020 WL 3497010, at *16. Ultimately, the Court declines to determine whether it may exercise personal jurisdiction over each Defendant and notes that it may transfer actions even when it does not have personal jurisdiction over all parties. See DiMarco v. Coates, No. 19-15597, 2020 WL 5593767, at *3 (D.N.J. Sept. 18, 2020) (citing Allegheny Techs., Inc. v. Strecker, No. 06-666, 2007 WL 852547, at *8 (W.D. Pa. Mar. 16, 2007) and Lafferty v. St. Riel, 495 F.3d 72, 80 (3d Cir. 2007)).

## B. Private Factors

### 1. The Preference and Convenience of the Parties

Plaintiffs, in their opposition, argue that their choice of forum is presumptively correct and may be disturbed only if the relevant public and private factors clearly weigh in favor of transfer.  (ECF 217 at 67-68).  Here, according to Plaintiffs, all named Plaintiffs reside in New Jersey, represent a New Jersey subclass, viewed and relied on challenged representations in New Jersey, and transfer to the District of Utah would hinder their ability to carry out their representative responsibilities.  (Id. at 68-69).

Moving Defendants counter that class representatives' choice of forum is entitled to reduced deference and even less deference should be afforded here as the operative facts that this action centers on – the creation and operation of the alleged enterprise and the products' development, marketing, etc. – took place in Utah.  (ECF 178-1 at 23-24; ECF 183-2 at 22-23).

The Court agrees that a plaintiff's choice of forum is "presumptively correct," however, "[t]he choice of forum by a plaintiff is simply a preference; it is not a right."  See Prime Hookah, Inc. v. MK Distribs., Inc., No. 19-7283, 2020 WL 563524, at *3 (D.N.J. Feb. 5, 2020) (alteration in original) (quoting Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 452 (D.N.J. May 26,

1999) and then Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.,
102 F. Supp. 2d 518, 530 (D.N.J. May 30, 2000)); Dialight Corp.
v. Allen, No. 15-1090, 2015 WL 5996287, at *5 (D.N.J. Oct. 14,
2015) (same).  The deference afforded to Plaintiffs' choice of
forum is diminished where, as here, they have brought their
claims on behalf of themselves and a putative nationwide class.
See Santomenno v. Transamerica Life Ins. Co., No. 11-736, 2012
WL 1113615, at *5 (D.N.J. Mar. 30, 2012); see also Geraci v. Red
Robin Int'l, Inc., No. 1:18-cv-15542, 2019 WL 2574976, at *5
(D.N.J. June 24, 2019) ("Courts have . . .  looked to the
location of class members, not the class representative, with
respect to the two fora.").

     The general deference paid toward a plaintiff's choice of
forum is diminished for class actions for two primary reasons.
First, in class actions, "the participation of the class
representative is generally minimal."  Santomenno, 2012 WL
1113615, at *5 (quoting Job Haines Home for the Aged v. Young,
936 F. Supp. 223, 228, 231 (D.N.J. Aug. 2, 1996)).  Second,
potential members of the class are likely to be spread
throughout the country, diminishing the importance of the forum
chosen by the plaintiff.  See id.

     In the Court's initial opinion denying SanMedica's motion
to transfer, the Court was persuaded by Deibler's efforts to
distinguish this case from Young, noting that the instant case

18

was a statewide, as opposed to nationwide, class action solely involving products purchased by New Jersey residents and relying solely on New Jersey law. <u>Diebler</u>, 488 F. Supp. 3d at 178. Those considerations have changed. Though Plaintiffs contend that transfer to Utah will impede their ability to represent the classes and constitute a financial hardship, (ECF 216 at ¶ 4; ECF 217 at 26-28, 69), they seem to acknowledge that financial hardship is not alone sufficient, (ECF 217 at 27-28 (referring to the "ends of justice" standard under the RICO longarm statute)), and do not provide any indication that Plaintiffs' participation will be greater here than what is common in a typical class action. The Court therefore finds that the parties' choice of forum is essentially neutral as to transfer. <u>See</u> <u>Santomenno</u>, 2012 WL 1113615, at *6-7 (rejecting the plaintiffs' argument that the defendants would not have been as inconvenienced by denial of transfer as the plaintiffs would have been by grant of transfer due to the defendants' superior resources as it was unclear whether the plaintiffs would have been required to be present for the majority of the trial and concluding that the parties' relative conveniences were neutral); <u>see also</u> <u>Geraci</u>, 2019 WL 2574976, at *5-7 (transferring the action to the United States District Court for the District of Colorado despite the plaintiff's arguments that his choice of forum in New Jersey should have been given great

weight, he would have been able to more aggressively represent the class in his home state, and both he and the defendant had substantial contacts in New Jersey).

### 2. Location of Records and Witnesses

The Court turns next to the availability of evidence in the form of books and records and witness testimony.  Moving Defendants assert that most of the relevant documentary evidence is located in Utah.  (ECF 178-1 at 25; ECF 183-2 at 25). Plaintiffs counter that the weight placed on the availability of books and records in the transfer analysis is dependent on their ability or inability to be produced in the alternative forum. (ECF 217 at 74-75).  Here, the Court agrees that – to the extent that relevant studies, marketing materials, communications, and similar information can be produced electronically – and there is no indication that they cannot – their location in Utah is of little relevance.  See Lang v. Patients Out of Time, No. 20-615, 2020 WL 5531249, at *5 (D.N.J. Sept. 15, 2020) ("Given the prevalence of electronically stored information and technological advances, documents or records can be easily moved electronically to different venues.").  The Court thus finds the location of records to be neutral as to transfer to the extent that relevant records may be transmitted electronically.

Moving to the location of witnesses, the "compulsory process over non-party witnesses has been referred to as the

single most important factor in a Section 1404 analysis." See
Lifecell Corp. v. Lifenet Health, No. 15-6701, 2016 WL 544489,
at *5 (D.N.J. Feb. 9, 2016) (citing Teleconference Sys. v.
Proctor & Gamble Pharms., Inc., 676 F. Supp. 2d 321, 333 (D.
Del. Nov. 25, 2009) and LG Elecs., Inc. v. First Int'l Comput.,
Inc., 138 F. Supp. 2d 574, 590-91 (D.N.J. Apr. 11, 2001)).
Here, in support of the motion of entity Defendants excluding
Limitless, Gay has provided a declaration listing "non-party
witnesses, among many others, [who] are all located in Utah and
have information and will likely testify," including 1) Keith L.
Blauer, M.D., an infertility specialist residing in Utah who has
recommended SeroVital to patients; 2) former employees Steve
Dickert, Stephanie Davis, Brian Robles, Jeff Wasden, Leo
Trautwein, and Amy Heaton, Ph.D. who are all residents of Utah
and would testify as to sales, advertising, packaging, and
products' safety and efficacy; 3) Jim Kreeck, a Utah resident
with information concerning product sales and potential class
members; and 4) Steve and Melyn Campbell, owners of Limitless
who would testify about both the marketing and sales of Thrive
and SeroDyne and the allegations as to the control of Limitless.
(ECF 183-1 at ¶ 16).

Plaintiffs dismiss the witnesses identified in the Gay
declaration, arguing that the potential testimony of Blauer is
irrelevant, sales data and customer identification are to be

proven via related lists and reports, the availability of a
defendant's own employees should not weigh on transfer, and to
the extent that the identified witnesses are unavailable, they
may submit video-recorded depositions in lieu of live testimony.
(ECF 217 at 71-73).  Further, Utah is not more convenient than
New Jersey for six witnesses identified in SanMedica's Rule
26(a) disclosures in Pizana, who reside in California,
Louisiana, and Australia.  (Id. at 73; ECF 216-22).

As an initial matter, the Court will not base its analysis
on disclosures made in a separate action.  Additionally, the
Court agrees that the convenience of employee witnesses is of
little consequence to the transfer analysis.  See Bank United,
NA v. GC of Vineland, LLC, No. 2:18-cv-12879, 2020 WL 3453817,
at *4 (D.N.J. May 28, 2020), report and recommendation adopted,
2020 WL 3452152, (D.N.J. June 23, 2020); see also Novartis v.
MillerCoors LLC, No. 15-3891, 2015 WL 6407837, at *3 (D.N.J.
Oct. 20, 2015) ("In deciding a motion to transfer, courts
distinguish between party and non-party witnesses.  Party
witnesses usually carry less weight because they are presumed as
willing to testify in either forum, even if it may be
inconvenient.  Non-party witnesses, on the other hand, may be
compelled to testify only by subpoena." (citations omitted)).
However, this same consideration has not been applied to former
employees like Dickert, Davis, Robles, Wasden, Trautwein, and

22

Heaton, who are non-parties.  See PNY Techs., Inc. v. Miller,
Kaplan, Arase & Co., LLP, No. 14-4150, 2015 WL 1399199, at *15
(D.N.J. Mar. 24, 2015) (concluding that the convenience of
witnesses was neutral because, while the defendant identified
non-party witnesses residing in the Northern District of
California, the plaintiff argued that all of its non-party
witnesses, many of them former employees, resided in New
Jersey).  Plaintiffs' contention that unavailable Utah witnesses
may simply provide recorded depositions further ignores the fact
that the "availability of depositions as a method of providing
witness testimony is not determinative [in requests to transfer
venue]."  See Kane v. Ollie's Bargain Outlet Holdings, Inc., No.
18-3475, 2018 WL 6168085, at *5 (D.N.J. Nov. 26, 2018)
(alteration in original) (quoting Ramada Worldwide v. Bellmark
Sarasota, No. 05-2309, 2006 WL 1675067, at *4 (D.N.J. June 15,
2006)).

The Court will not evaluate the prospective quality of
Defendants' testimonial evidence here.  Even if the Court was
persuaded by Plaintiffs' arguments – or was to determine that
Gay's identified witnesses would be merely inconvenienced rather
than unavailable if this action remained in New Jersey – it
would still be constrained to find in favor of Defendants due to
Plaintiffs' failure to identify any non-party New Jersey
witnesses.  Instead, Plaintiffs identify one of their experts,

Dr. Madoff, who is a resident of Maryland.  (ECF 216 at ¶ 5(c);
ECF 217 at 74).  Though the Court does not doubt that it would
be easier for Dr. Madoff to travel to New Jersey than Utah, it
also finds that – similar to a party's employee – it would be in
Plaintiffs' interest to ensure his presence.  See <u>MNM Stables,
LLC v. Eddie Woods Stables, LLC</u>, No. 07-5142, 2008 WL 11509876,
at *4 (D.N.J. Feb. 5, 2008) ("[A]s Defendants cogently point
out, to the extent Plaintiff seeks to employ expert witnesses on
his behalf, Plaintiff would have control over these experts so
as to compel them to appear in Florida.").

Beyond Dr. Madoff, Plaintiffs vaguely claim that they
anticipate presenting the testimony of "[n]umerous retailers"
regarding product displays, customer complaints, sales, and
related information; media outlets, print publications, and
brand ambassadors who Defendants used to market products; and,
potentially, "various New Jersey consumers."  (ECF 216 at ¶ 5;
ECF 217 at 73-74).  Cognizant of the complexities of Defendants'
alleged scheme and the challenges they present for Plaintiffs'
pleading and motion practice, this sort of information – boiling
down, at least in part, to where Plaintiffs observed allegedly
false displays, advertisements, and the like – would seem to be
uniquely within Plaintiffs' knowledge.  The lack of specificity
as to potential witnesses is especially glaring considering
Plaintiffs' inclusion – as part of their opposition – of

exhibits evidencing Defendants' alleged manufacturing, marketing, distribution, research and development, and managerial contacts within New Jersey.  (ECF 218-15; ECF 218-16; ECF 218-17; ECF 218-18; ECF 218-21).

In short, the Court concludes that finding in favor of Plaintiffs on this factor would be to accept speculation over specifics.  It therefore finds that the convenience of witnesses favors transfer.  See Smith v. G2 Secure Staff, LLC, No. 19-16829, 2020 WL 2520420, at *3-4 (D.N.J. May 18, 2020) (finding that the convenience of a single yet critical witness residing in Los Angeles favored transfer as the plaintiff did not identify any witness who would be unable to testify in California); Smith v. Circle Line Sightseeing, No. 11-4185, 2012 WL 1495446, at *3-4 (D.N.J. Apr. 26, 2012) (concluding that the plaintiff ineffectively argued that the case could not proceed in New York, in part, because she did not identify any non-party witnesses); Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A., No. 10-6457, 2011 WL 3329087, at *5 (D.N.J. Aug. 2, 2011) (discussing the importance of compulsory process in the transfer analysis and deciding that "[t]he inability to compel the attendance of potentially important witnesses at trial in New Jersey is a compelling reason weighing strongly in favor of transfer"); Tuoni v. Elec. Evidence Discovery Inc., No. 10-2235, 2010 WL 5441656, at *5 (D.N.J. Dec. 23, 2010) (concluding that

the convenience of witnesses favored transfer upon the
plaintiff's failure to identify a single witness located in New
Jersey).

### 3. From Where the Claims Arose

The Court also concludes that Plaintiffs' claims arose from
activities in Utah, further favoring transfer.  Moving
Defendants posit that each Defendant worked in Utah, Utah was
the "nerve center" of Defendants' business operations, products
were created and marketed in Utah, and – to the extent that
claims arose out of New Jersey due to Plaintiffs' purchases
there – the same can be said of every other state in a
nationwide class action.  (ECF 178-1 at 24; ECF 183-2 at 23-24).

Plaintiffs, on the other hand, focus on the contacts
Plaintiffs and their state-law claims have with New Jersey and
Defendants' significant alleged sales in New Jersey.  (ECF 217
at 75-76).  Presuming that product sales are proportional to the
population of each state, Defendants sold three-times as many
products in New Jersey as Utah, according to Plaintiffs.  (Id.
at 76).  Further, to the extent that Defendants focus on the
FAC's RICO claim, the claim does not favor one district more
than another.  (Id. at 77).  The Court is unpersuaded.

First, the FAC itself alleges that Defendants distributed
products and disseminated false and misleading product
information from Basic Research headquarters in Utah to

26

consumers across the country.  (ECF 133 at ¶¶ 66, 71 75, 77, 79, 83, 87).  The Court finds that concluding that Plaintiffs' claims therefore arose from Utah is consistent with similar analyses conducted within this District.  See, e.g., Greenwald v. Holstein, No. 13-6724, 2015 WL 12843229, at *8 (D.N.J. May 29, 2015) (concluding that the locus of the allegedly culpable conduct in a case alleging fraud, negligent misrepresentation, and similar claims was Ohio despite the transaction taking place in New Jersey because the defendants concealed information and allegedly communicated with one another in Ohio); Fasano v. Coast Cutlery Co., No. 11-3977, 2012 WL 1715233, at *4 (D.N.J. May 15, 2012) (finding that the defendant created false advertising statements and issued the statements in Oregon, weighing in favor of transfer there); Maximum Human Performance, Inc. v. Dymatize Enters., Inc., No. 09-235, 2009 WL 2778104, at *7 (D.N.J. Aug. 27, 2009), report and recommendation adopted, 2009 WL 2952034, (D.N.J. Sept. 14, 2009) (determining that private-interest factors favored transfer to the United States District Court for the Northern District of Texas because the defendant's marketing, shipping, manufacturing, research, and development took place there and the plaintiff's claims of false advertising and unfair competition turned on an alleged false advertising campaign conducted in Texas).

Similarly, the FAC states that Defendants' alleged

27

racketeering scheme was based in Utah – with false
representations disseminated from Utah, Defendants using mail
and interstate wires to create and register subsidiaries and
affiliates in Delaware while "acting from Utah," and as part of
a conspiracy among individuals and entities located in Utah.
(ECF 133 at ¶¶ 136, 141-53).  The Court finds that these
allegations further point to Utah as the forum from which
Plaintiffs' claims arise.  See Tang v. Citic Cap. Holdings Ltd.,
No. 21-17008, 2022 WL 6036573, at *7 (D.N.J. Oct. 7, 2022)
(applying the Section 1404 factors to a Section 1412 analysis
and determining that transfer to Delaware was appropriate
because it was where the allegedly "sham" bankruptcy proceeding
that was part of the alleged RICO enterprise took place); see
also In re All Terrain Vehicles Litig., Nos. 88-237, 88-1914,
88-3031, 88-3178, 88-3910, 88-5509, 88-5510, 1989 WL 30948, at
*11 (E.D. Pa. Feb. 23, 1989) (finding that venue was proper in
the Central District of California, and transfer was therefore
appropriate, based on the plaintiffs' RICO allegations premised
on false representations regarding vehicles and the fact that
marketing of the vehicles took place in the Central District of
California).  This factor therefore weighs in favor of transfer.

**C. Public Factors**

The Court finds that public-interest factors also favor
transfer.

First, "the public interest in the enforceability of the
judgment is not concerned with the <u>convenience</u> with which the
parties may obtain a judgment; rather, this factor concerns
whether a judgment is <u>capable</u> of being enforced at all." <u>In re</u>
<u>Howmedica Osteonics Corp.</u>, 867 F.3d 390, 406 n.10 (3d Cir. 2017)
(citing <u>Bhatnagar v. Surrendra Overseas Ltd.</u>, 52 F.3d 1220, 1225
n.3 (3d Cir. 1995)).  The parties do not seem to argue that this
District or the District of Utah is more or less capable of
enforcing judgment in this matter, and so the Court finds this
factor to be neutral.

Second, Moving Defendants contend that practical
considerations favor transfer because Plaintiffs' counsel is
prosecuting substantially similar claims in <u>Pizana</u>, and it makes
little sense for the two actions to proceed on opposite coasts –
a consideration that is all the more compelling if and when
<u>Pizana</u> is ultimately transferred to the District of Utah.  (ECF
178-1 at 26; ECF 183-2 at 24-25).[5]  Plaintiffs, meanwhile, argue

---

[5] Entity Defendants absent Limitless represent that motions to
dismiss similar to those pending here are also pending in <u>Pizana</u>
and that, under Ninth Circuit RICO precedent, <u>Pizana</u> is likely
to be transferred to the District of Utah if it is not dismissed
outright.  (ECF 183-2 at 18 (citing <u>Butcher's Union Local No.</u>
<u>498 v. SDC Inv., Inc.</u>, 788 F.2d 535, 539 (9th Cir. 1986)).  The
Court notes that efforts to transfer <u>Pizana</u> date at least as far
back as the Court's original transfer decision three years ago,
<u>see Diebler</u>, 488 F. Supp. 3d at 177, and the Court will not wade
into Ninth Circuit precedent here or predict how a district
court within the Ninth Circuit will apply said precedent.  This
opinion does not place any weight in <u>Pizana</u>'s potential

that <u>Pizana</u>'s potential transfer and consolidation with this matter is speculative.  (ECF 217 at 77).

The Court agrees with Plaintiffs regarding the applicability of <u>Pizana</u>.  It recognizes, however, that this matter presents a somewhat complex issue of personal jurisdiction in which only two Defendants do not contest jurisdiction in this District, both traditional and RICO-specific analyses are applicable, and – without rendering judgment on the issue here – the Court finds that possible results include dismissing one or more Defendants or permitting Plaintiffs leave to conduct jurisdictional discovery or add alter ego allegations to the FAC.  (ECF 217 at 55-65). Defendants are all clearly subject to personal jurisdiction in Utah, favoring transfer there.  <u>See</u> <u>Amtrust at Lloyd's Ltd. v. Breslin</u>, No. 14-7761, 2015 WL 1399588, at *4 (D.N.J. Mar. 26, 2015) ("The Third Circuit has held that where there is a bona fide dispute over the existence of <u>in personam</u> jurisdiction, the interests of justice are furthered by transfer of the action to another district in which the action could have clearly been brought." (citing <u>Schwilm v. Holbrook</u>, 661 F.2d 12, 16 (3d Cir. 1981))); <u>see also</u> <u>Interlink Prods. Int'l, Inc. v. Crowfoot</u>, No. 20-7654, 2020 WL 6707946, at *8-9 (D.N.J. Nov. 16, 2020)

---

dismissal or transfer.

(concluding that transfer to the Eastern District of California, where personal jurisdiction clearly existed, obviated the need to determine whether personal jurisdiction could have been exercised over state officials); Gray v. Apple Inc., No. 13-cv-7798, 2016 WL 4149977, at *6 (D.N.J. Aug. 3, 2016) (determining that enforceability of judgment and expediency favored transfer as "in personam [wa]s, at the very least, debatable").

Third, Moving Defendants argue that because the District of Utah has fewer pending cases per judgeship than the District of New Jersey,[6] court administration and congestion favor transfer. (ECF 178-1 at 26-27; ECF 183-2 at 26).  Plaintiffs do not dispute that this District is more congested than the District of Utah but urge this Court to give that factor little weight. (ECF 217 at 78).  The Court agrees and recognizes that transfer to the District of Utah will add to the work being conducted by judges and staff there.  Therefore, the Court finds that the "'relative congestion of the respective courts' dockets' has minimal importance in the overall transfer inquiry" and only slightly favors transfer here.  See Fernandes v. Deutsche Bank

---

[6] Moving Defendants rely on 2022 Judicial Caseload Profile statistics.  (ECF 178-1 at 26 n.6; ECF 183-2 at 26 n.16).  More recent statistics, published in June 2023, indicate that there are 3,732 pending cases per judgeship in the District of New Jersey as compared to 498 in the District of Utah.  U.S. Dist. Cts., National Judicial Caseload Profile 15, 85 (2023) (https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf).

Nat'l Trust Co., 157 F. Supp. 3d 383, 390 (D.N.J. Dec. 18, 2015)
(cleaned up) (quoting Yocham v. Novartis Pharm. Corp., 565 F.
Supp. 2d 554, 560 (D.N.J. June 16, 2008)).

Fourth, Plaintiffs contend that New Jersey has a compelling
local interest in this matter as Plaintiffs are New Jersey
residents who, in part, represent a New Jersey subclass,
Plaintiffs bring state-law claims, and New Jersey has an
interest in protecting its citizens from fraudulent advertising.
(ECF 217 at 78-79).  The Court does not dispute this interest.
However, it also finds that that interest is diluted by
Plaintiffs' representation of a nationwide class – the members'
states presumably each having a local interest in protecting its
citizens – and that Utah possesses an interest in not only
protecting class members that may reside there, but also in
adjudicating allegations that its citizens have formed "phony"
companies using its laws in order to perpetrate a fraudulent
scheme on consumers nationwide.  See Univest Cap., Inc. v.
Akiode Transitions MHT LLC, No. 17-1192, 2017 WL 3917679, at *5
(E.D. Pa. Sept. 7, 2017) (noting the compelling local interest
in Texas to hear a matter involving numerous physicians licensed
in Texas); Palagano v. NVIDIA Corp., No. 15-1248, 2015 WL
5025469, at *7 (E.D. Pa. Aug. 25, 2015) (finding that, despite
the presence of a Pennsylvania class asserting violations of
Pennsylvania law, the local interest was "at most neutral" as

32

the defendant's principal place of business was in California, misrepresentations originated in California, and the relevant computer graphics chip was sold nationwide and subject to numerous legal actions in other districts); see also Geraci, 2019 WL 2574976, at *4 (concluding that Colorado had a greater interest than New Jersey in adjudicating a class action alleging violation of the Telephone Consumer Protection Act because the defendant company was headquartered in Colorado and made marketing decisions in Colorado that allegedly harmed individuals nationwide).  The Court thus concludes that this factor is neutral and, if anything, slightly favors transfer.

Fifth, Defendants assert that because – as they claim – the central claim of this matter is RICO, the public policies of New Jersey and Utah are neutral as to transfer.  (ECF 178-1 at 23; ECF 183-2 at 22 n.13).  Because none of the parties identify a difference between New Jersey and Utah public policy with regard to this case, the Court agrees that this factor is neutral.  See Culp v. NFL Prods. LLC, No. 13-7815, 2014 WL 4828189, at *8 (D.N.J. Sept. 29, 2014) ("The parties have not identified any public policy that would weigh in favor of or against transfer. Therefore, this factor is neutral.").

Finally, Plaintiffs point to the two counts alleging state statutory violations and this District's greater familiarity with New Jersey's "unique consumer protection statutes" as

reason to deny transfer.  (ECF 217 at 69-70).  The Court agrees now, as it did in analyzing SanMedica's original motion to transfer, "that this Court is better equipped to decide issues of New Jersey law than a court in the District of Utah."  See Diebler, 488 F. Supp. 3d at 179.  Furthermore, to the extent that Plaintiffs have added their RICO claim, federal courts are presumed to be equally familiar with federal law.  See Def. Distributed, 617 F. Supp. 3d at 239.  At the same time, Plaintiffs offer no support for their assertion that the applicable statutes are particularly unique and the Court recognizes that "[t]he familiarity of the trial judge with applicable law . . . does not weigh heavily for or against transfer, as district courts often interpret and apply state law and this case does not involve any novel or difficult application of state law."  Miller v. Chrysler Grp., LLC, No. 12-760, 2012 WL 6093836, at *7 (D.N.J. Dec. 7, 2012) (alteration and omission in original) (applying Section 1404 to a Section 1412 analysis and quoting Abrams v. Gen. Nutrition Cos., Inc., No. 06-1820, 2006 WL 2739642, at *10 (D.N.J. Sept. 25, 2006)).  Therefore, the Court maintains that the need to apply New Jersey statutory law disfavors transfer, but only slightly so.

The Court therefore concludes, based on the motions and opposition presented, that transfer to the District of Utah is warranted.  In so doing, the Court acknowledges its prior

decision denying transfer and the three years of litigation that have followed it.  As detailed above, the Court finds that the FAC has fundamentally changed this action with the addition of fifteen Defendants all subject to personal jurisdiction in Utah, a RICO claim alleging activities originating from Utah, and representation of a nationwide class.  These changes have altered the weighing of factors concerning the practical considerations of litigation, the convenience of non-party witnesses, local interests, and other factors relevant to the Court's transfer analyses.  They also persuade the Court to find that transfer nearly four years after this action was initially filed would not represent an inefficient use of legal resources as this case only somewhat resembles the action that was filed in 2019.

This opinion represents the Court's findings and intent. An order transferring this action will not be entered at this time.  Friedlander and Limitless will be provided thirty days to show cause why this matter should not be transferred to the District of Utah.  The Court will thereafter enter an order following consideration of the supplemental filings, which may include sua sponte transfer.  The Court is not soliciting any additional briefing by Moving Defendants or Plaintiffs.

**IV. The Parties' Motion to Seal**

Plaintiffs and SanMedica, lastly, seek to redact or seal

portions of Plaintiffs' omnibus opposition to Defendants'
motions to dismiss for lack of personal jurisdiction or transfer
and accompanying exhibits.  (ECF 230).[7]   Motions to seal are
governed by Local Civil Rule 5.3, see Medley v. Atl. Exposition
Servs., Inc., 550 F. Supp. 3d 170, 203 (D.N.J. July 26, 2021),
which requires that motions to seal within this District be made
via a single, consolidated motion on behalf of all parties, L.
Civ. R. 5.3(c)(1), and include an index providing with
particularity (a) the nature of the materials or proceeding at
issue, (b) the private or public interests warranting the relief
sought, (c) the clearly defined, serious injury that would
result without relief, (d) an explanation as to why less
restrictive alternatives are unavailable, (e) any prior orders
sealing the same materials, and (f) the identity of any
objector, L. Civ. R. 5.3(c)(3).

The general presumption in favor of public access to
judicial records may be overcome by movants only with a showing
of "good cause" – that is "a particularized showing that
disclosure will cause a 'clearly defined and serious injury'" –
that materials should be protected.  See Medley, 550 F. Supp. 3d

---

[7] Gay, Daines, Blackett, and Humpherys filed a sealed reply brief
on July 21, 2023, (ECF 224), but thereafter wrote to the Court
that they did not intend to file a subsequent motion to seal,
(ECF 228).  The Court will therefore order their reply brief to
be unsealed.

at 203-04 (quoting <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 786 (3d Cir. 1994)).

Here, Magistrate Judge Joel Schneider entered a discovery confidentiality order on November 3, 2020.  (ECF 47).  The parties' motion identifies for redaction or sealing portions of the opposition motion and declaration containing confidential information such as sales figures and exhibits including transcripts from depositions taken in <u>Pizana</u>, sales data, and records reflecting Defendants' alleged manufacturing, marketing, distribution, and similar relationships.  (ECF 230; ECF 230-3). The index attached to the motion identifies the specific portions of documents sought to be redacted or – in some cases – fully sealed, the interests at stake, the injury that would result if the information was disclosed, and the proposed redactions to which Plaintiffs object.  (ECF 230-3).

The Court notes generally that SanMedica's stated bases for sealing are generalized.  The section titled "Disclosure Results in Clearly Defined and Serious Injury" describes the information sought to be redacted or sealed.  (<u>Id.</u>).  The section titled "No Less Restrictive Alternative to Sealing" repeats over and over that publication of the identified information would provide competitors with an unfair advantage – sometimes adding that disclosure would also publicize personal identifying information – and that "[t]here is no less restrictive alternative."  (<u>Id.</u>).

After reviewing the material sought to be sealed, particularly the portions subject to the parties' disagreement, the Court primarily agrees with SanMedica that sealing is appropriate.  These portions of the record are by and large exhibits or related discussions concerning sales, branding and advertising strategies, consumer surveys, and customer complaints received by SanMedica.  The Court acknowledges that this sort of information has been recognized as sensitive and likely to cause serious competitive injury within this District.[8] See Mitsubishi Tanabe Pharma Corp. v. Aurobindo Pharma USA, Inc., No. 17-5005, 2021 WL 2769823, at *2 (D.N.J. July 2, 2021) (concluding that there was a legitimate privacy interest in the sales, business strategy, and similar information sought to be sealed and that disclosure would have placed the defendants at a competitive disadvantage); Eagle View Techs., Inc. v. Xactware Solutions, Inc., No. 15-7025, 2020 WL 11028382, at *2 (D.N.J. June 9, 2020) (recognizing the sensitivity, and serious injury that might have resulted from disclosure, of documents containing financial records, customer information, and the like); Gonzalez v. Bob's Discount Furniture, LLC, No. 3:16-CV-3904, 2017 WL 11582047, at *2 (D.N.J. Jan. 25, 2017) (finding a

---

[8] This ruling is not intended to bar the transferee Court, under the doctrine of law of the case or any other legal principle, from unsealing any part of the record as that Court deems appropriate at a later date.

legitimate privacy interest in annual sales data).  The Court certainly would have preferred that SanMedica provide the privacy interests and potential injuries at stake in a more individualized manner, but that does not render sealing inappropriate here.  See Akishev v. Kapustin, No. 13-7152, 2022 WL 17553035, at *2-3 (D.N.J. Dec. 8, 2022) (concluding that the defendants' assertion of potential injury was vague, but nonetheless holding that the balance of factors supported sealing).  This is particularly so based on the Court's review of the relevant materials and the parties' substantial agreement on the portions of the record to be sealed.

The Court agrees with Plaintiffs, however, as to Exhibit 114 and related deposition testimony – lines 326:9 to 330:3, 332:11 to 333:8, and 333:10 to 337:8 – included in Exhibit 8. (ECF 218-4).  This material, which includes product labeling and related discussions, does not – as tailored by the Court – divulge any apparent strategy of SanMedica.

Therefore, the parties' joint motion to seal will be granted in part.  The parties will be ordered to file versions of the identified filings and exhibits, redacted consistent with their index and this opinion, within thirty days.

**V. Conclusion**

For the reasons stated above, the parties' motion to seal, (ECF 230), will be granted in part and denied in part and

Defendants' motions to dismiss, (ECF 174; ECF 178; ECF 181; ECF 183), will be denied as moot.  Limitless and Friedlander will be provided thirty days to show cause why this matter should not be transferred to the District of Utah.  The reply brief of Gay, Daines, Blackett, and Humpherys, (ECF 224), will be unsealed and the parties will be provided thirty days to file the materials identified in their joint motion to seal in a manner consistent with their submitted index and this opinion.

Date: September 18, 2023                    s/ Noel L. Hillman

At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.